CORAN AUTO SALES *v.* Peter Scott HARRIS

CA 00-1058                                                45 S.W.3d 856

Court of Appeals of Arkansas
Division II
Opinion delivered June 6, 2001

*McNutt Law Firm*, by: *Mona J. McNutt*, for appellant.

*George H. Stephens, II*, for appellee.

Andree Layton Roaf, Judge. Coran Auto Sales ("Coran") appeals the circuit court's award of a judgment for $4,660 in a bench trial. Appellee, Peter Scott Harris, successfully sued Coran for fraud in municipal court, alleging that Coran sold him a vehicle with an incompatible replacement engine, and had told him the engines were the same. On *de novo* appeal, the circuit court awarded judgment to Harris, but did so on the basis of revocation of acceptance. On appeal, Coran argues that the circuit court erred because revocation of acceptance was neither pled nor proven, and by awarding Harris the full purchase price while

allowing him to also retain the vehicle. We agree that the trial court erred in finding that there was a revocation of acceptance and reverse and dismiss.

On October 28, 1997, Scott Harris purchased a 1991 Mitsubishi Eclipse from Coran Auto Sales for $4,950. Coran had had the engine replaced with an engine from a 1996 Hyundai Sonata. At trial, Harris and his father, David Harris, both testified that Richard Coran, the owner of Coran Auto Sales, told them that the engine had been replaced. David Harris stated that when he asked Coran if the engine was compatible, Coran said, "You bet, they are the same engine." David stated that he was originally told that the new engine had a ninety-day warranty, but when they were signing the papers to purchase the car, Coran told them he had the engine too long on the lot, so the warranty had expired. Scott Harris purchased an extended warranty at Coran's suggestion.

Approximately twenty-eight days later, Harris began experiencing problems with the car. Harris testified that he contacted Coran, who told him to contact the company that issued the warranty. When the warranty company did not provide coverage, Harris again told Coran he was having problems. Coran told him to go to Conway Imports where the engine had been installed. David Harris said he went with Harris to Conway Imports and were told that they did not honor any kind of warranty. Approximately six weeks after he purchased the car, Harris took it to Larry Reynolds, a mechanic at L&L Auto Service.

Reynolds testified that he ran a computer diagnostic check that discovered electronic problems with the sensors as a result of an incompatible engine, and that eventually, the computer system would be ruined if the engine was not replaced. Though the car was drivable, Reynolds testified that it would be very difficult to drive because it was getting too much fuel. Reynolds further testified that he did not think that Coran "would be out of line to rely on their (Conway Imports) representations in regard to foreign car parts and motors."

Fred Spikes, the Conway Imports mechanic who installed the replacement engine, testified that when he installed the motor, he changed the sensors on the engine, and the car ran "fine." He admitted that he represented under oath, on January 27, 1998, that the engine was compatible with the car and then said, "[s]ometimes it will work out, sometimes it won't." He stated if he was brought an engine that would not work appropriately in a car, he would

normally notify the customer, and he did not notify Coran that there was a problem.

Coran testified that neither Harris nor his father inquired about the compatibility of the engine when Harris bought the car. Coran stated the only problem Harris had with the car was with two tires, which Coran replaced. He stated Conway Imports found an engine for the car, that he paid $1350 for it and that he relied on Conway Imports' representation that the engine was compatible because he was not a mechanic. Coran stated he thought Conway Imports should be the party in court because he sold the car "as is" to Harris. Coran also said that he gave Harris all the paperwork on the engine when he sold him the car. Coran stated that he did not know the nature of the problems with the car until the small-claims court case, and Daniel Harris also testified that they did not advise Coran that the engine was incompatible.

At the close of Harris's case, Coran moved for a directed verdict arguing Harris had not proven fraud. Harris's counsel responded that Harris relied on statements Coran made about the engine and Coran breached the implied warranty of merchantability. The trial court stated that other parties needed to be brought into the lawsuit and that was a problem when people represent themselves in small-claims cases. The parties agreed to continue the case, however, no additional parties were added. The trial court ultimately awarded judgment to Harris and stated in a letter opinion:

> It is my conclusion that Mr. Harris should prevail on this Complaint against Coran Auto Sales. My reasons for that finding are that Mr. Coran directed that a new engine be placed into the vehicle. He sold it as a vehicle with a new engine. However, it is clear from the testimony that the engine which was installed in the vehicle lacked the appropriate wiring harness and other accessories to make it operate in a proper manner. The case law is clear that a automobile dealer is responsible for the product which he sells. See specifically, *Currier v. Spencer*, 299 Ark. 182 (1989), *O'Neal Ford, Inc. v. Early*, 13 Ark. App. 189 (1985), and *Union Motors, Inc. v. Phillips*, 241 Ark. 857 (1967).

> These cases are replete with language indicating the responsibility of the dealer even in spite of contractual attempts to negate any warranties on a claim of revocation of acceptance. It is my conclusion that revocation for acceptance should be granted and

the plaintiff restored the purchase price of the automobile plus the costs of this action.

The standard of review in civil cases where the trial judge, rather than a jury, sits as trier of fact is whether the judge's findings were clearly erroneous or clearly against preponderance of evidence. *Schueck v. Burris*, 330 Ark. 780, 957 S.W.2d 702 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Wade v. Arkansas Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999).

Coran argues that the trial court committed error in finding revocation of acceptance because Harris only pled fraud in his complaint. Coran asserts this amounted to unfair surprise as he did not have notice that Harris was claiming revocation of acceptance. In his small-claims complaint, Harris alleged fraud, and the facts he stated in support of the claim were that he had problems with the engine because it was not compatible, that Coran said the engine was compatible, and the warranty he purchased from Coran did not cover the engine problems. There were no further pleadings filed in circuit court, and Harris did not amend his complaint.

Arkansas Rule of Civil Procedure 8(a) provides that a pleading "shall contain (1) a statement in ordinary and concise language of facts showing that the court has jurisdiction of the claim and is the proper venue and that the pleader is entitled to relief, and (2) a demand for the relief to which the pleader considers himself entitled." In addition, it is well recognized that pleadings are to be liberally construed and are sufficient if they advise a party of its obligations and allege a breach of them. *Deitsch v. Tillery*, 309 Ark. 401, 405, 833 S.W.2d 760 (1992). This court has held that, although pleadings are required so that each party will know the issues to be tried and be prepared to offer his proof, Rule 15(b) of the Arkansas Rules of Civil Procedure provides that issues not raised in the pleadings but tried by express or implied consent of the parties shall be treated in all respects as if they had been pled. *In re Estate of Tucker*, 46 Ark. App. 322, 881 S.W.2d 226 (1994). However, this court will not imply consent to conforming the pleadings to the proof merely because evidence relevant to a properly pled issue incidentally tends to establish an unpled one. *Heartland Community Bank v. Holt*, 68 Ark. App. 30, 3 S.W.3d 694 (1999).

It is undisputed that Coran did not expressly consent to litigating the issue of revocation of acceptance, the basis for the trial

court's judgment. Further, the small-claims complaint did not advise Coran of any claim other than fraud.

Arkansas Code Annotated section 4-2-608 (Repl. 1991) provides:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
> (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
> (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
> (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Here, while Harris did present testimony that the car was nonconforming, he presented no testimony that he revoked his acceptance of the car. In fact, none of the abstracted testimony establishes that Harris attempted to revoke acceptance of the car. The only evidence presented about contacts that Harris had with Coran after he purchased the car was that Harris and his father called Coran to tell him the engine did not work properly and attempted unsuccessfully to utilize the extended warranty purchased by Harris to address the problems. In the record before us, the issue of revocation of acceptance was neither pled, tried by express or implied consent of the parties, nor proven by the evidence, and the trial court erred in awarding judgment on this basis.

Harris asks us, alternatively, to affirm the trial court's judgment based on the fraud or misrepresentation theory that was pled. However, Harris is asking for affirmative relief. The trial court's letter opinion is silent in regard to this cause of action. Harris did not request further findings from the trial court on the issue and did not file a contingent cross-appeal should this court reverse on direct appeal. Consequently, we cannot address this argument. *See Schrader v. Bell,* 301 Ark. 38, 781 S.W.2d 466 (1989). Although this court can affirm a trial court's ruling if it reaches the right result for the wrong reason, *Marine Servs. Unlimited, Inc. v.*

*Rakes*, 323 Ark. 757, 918 S.W.2d 132 (1996), we cannot act as a fact-finder in cases appealed from circuit court. *Wildman Stores v. Carlisle Dist. Co.,* 15 Ark. App. 11, 688 S.W.2d 748 (1985). Here, the evidence presented on the issue of fraud was controverted. When there are issues of credibility and conflicting testimony, we defer to the superior position of the factfinder to resolve those questions. *Maloy v. Stuttgart Mem'l Hosp.,* 316 Ark. 447, 872 S.W.2d 401 (1994). The trial court not only made no findings of fraud in this case, but held for Harris on another theory not pled, creating the inference that Harris failed to persuade the trial court in regard to the fraud allegation. *Cf. Maloy, supra* (holding trial court's failure to make findings in ruling for plaintiff created inference that defendant's testimony failed to persuade the court). Accordingly, we must reverse and dismiss this case.

GRIFFEN and VAUGHT, JJ., agree.